DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 1:12 CR 145 |
| Plaintiff, | )<br>) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | ANALYZING THE SENTENCING |
| | ) | FACTORS SET FORTH IN 18 U.S.C. |
| Angela R. Morales, | ) | SECTION 3553(a) |
| Defendant. | )<br>) | |

I. Introduction

The Court conducted the sentencing hearing of the defendant Angela Morales on September 6, 2012. The Court determined that the defendant's total offense level was nine with a criminal history category of I calling for a sentencing range under the advisory sentencing guidelines of four to ten months in Zone B. Based on good cause shown, the Court varied downward one level to offense level eight calling for a sentencing range of zero to six months, but with the understanding that the defendant must serve at least one day in custody. At the conclusion of the sentencing hearing, the Court sentenced the defendant to confinement for a period of one day with supervised release for a period of three years plus an order to make restitution in the sum of $17,240.00 payable to Third Federal Savings and Loan during the three year period of supervised release.

II. The Analysis Required by 18 U.S.C. § 3553(a)

The Court sets forth its analysis of the sentencing factors required by *Booker* and the statutory guidance provided by 18 U.S.C. §3553(a) as follows:

(1:12 CR 145)

### (a) Factors to be considered in imposing a sentence.

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -

### (1) The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

According to Federal Bureau of Investigation FD-302, in March 2011 the defendant was working as a teller supervisor at Third Federal's Ohio City Branch in Cleveland, Ohio. Morales acknowledged she was aware of Third Federal's policy on the limits for employees cashing personal checks at branch locations. Morales was also aware of the process known as force-balancing. A force-balance occurred when the teller entered a cash amount into the computer system that agreed with the computer system, regardless of the actual amount of cash on hand in the drawer. Also, a Third Federal employee from the headquarter branch would perform an audit of each teller's drawer at least once a month without warning.

On March 25, 2011, the security department at Third Federal was notified by the Bank Secrecy Act (BSA) Team that teller Angela Morales appeared on a report for the same-day cashing of checks at multiple Third Federal locations. Third Federal allowed employees, as a courtesy, to cash personal checks at a Third Federal branch, not to exceed $500 individually or in the aggregate in a single day. BSA Team reports showed Morales cashed checks at different Third Federal locations on four separate days in March 2011 during which all four sets of transactions exceeded Third Federal's Associate Transaction Guidelines.

On March 29, 2011, Third Federal security investigators interviewed Morales and Morales admitted to violating the Third Federal policy on cashing personal checks and she admitted taking money from her teller drawer. Morales told investigators that her mother in Guatemala was sick and that she planned to pay the money back from her 401K. However, she was unable to draw on her 401K. Morales stated she took the money over a period of time, not in a two-week span. Third Federal claimed Morales took

(1:12 CR 145)

> $17,240 from her teller drawer and Morales did not dispute the amount that was taken. Morales stated she force-balanced the teller drawer on a daily basis to cover the missing funds and confessed to taking $17,240.

The defendant's acceptance of responsibility is set forth in paragraph ten of the presentence report as follows:

> "I would like to express to the court how deeply sorry I am for my actions committed against Third Federal Savings Bank. There is no day that goes by that I ask the Supreme Being for his forgiveness and for others to forgive me. Not only I damaged my reputation the trust of others and all the hurt I have caused my husband, my children, my family and friends.
>
> "My actions were an act of desperation when I found out that my mother was diagnosed with cancer. I knew she did not have the funds for the proper treatment, I didn't know what to do. I was very concern and worry.
>
> "My mother is living in a country where medical insurance is only for the few, and public hospitals barely have medicine to treat the poor. My mother does not have the means to afford medical insurance. For her to get the proper care and treatments she had to seek a specialized doctor or come to the U.S. for treatments. Specialized doctors are in private hospitals costing thousand of dollars. I was so desperate that I could not bear the thought of losing my mother. During this time, I was not even thinking of the consequences I could face or the damage I was doing to myself and others. I was only thinking that I did not want to see my mother die if treatments would not start immediately. My solution was to borrow funds from my box at Third Federal thinking I will repay them later.
>
> "After losing my job, I realized how wrong I was and how bad I felt.
>
> "Your Honor, I'm not a bad individual, this is the first time I have been in trouble with the law. I turned myself in with Third Federal, I felt it was the right thing to do, and I knew then, how much trouble I got myself and need to face the consequences.

(1:12 CR 145)

> "Your Honor, I ask for leniency at the time of my sentence, I'm a good citizen that likes to help others and get involved in the community. I was caught in a very bad moment of desperation, all for the love of my mother; I did not want to see her die.
>
> "Please forgive me, this will never happen again."

The defendant, age 48, is the oldest of three children born to the union of her parents in Guatemala City, Guatemala. Her siblings, who reside in Guatemala, are ages 38 and 44. The defendant's father is deceased and her mother also resides in Guatemala. The defendant reported having four step siblings.

The defendant described her childhood as very good. Her parents were married until her father passed away approximately five years ago. The family lived in a good neighborhood and the defendant never suffered from any type of abuse. The defendant's mother, diagnosed with breast cancer, underwent surgery in 2012. The defendant reportedly talks to her mother at least twice per week and her sister on holidays. The defendant stated her brother moves around a lot so she does not talk with him as frequently.

The defendant dated her husband while in high school, married him and then moved to the U.S. She has resided in the U.S. for approximately 18 years and reportedly became a U.S. citizen in 2008. Her marriages remains intact. They have two children ages seven and 12. According to the defendant, her mother-in-law and brother-in-law reside in the upstairs portion of the home.

The defendant is in overall good health. She was recently in a car accident and suffered a back injury. She is currently seeing a chiropractor three times a week and is currently taking ibuprofen for pain and Naproxen.

(1:12 CR 145)

The defendant reported that she has never been seen by a psychiatrist, psychologist or counselor for any reason. The defendant also reported she has never experimented with any illegal substances and drinks a beer or wine at home on holidays or special occasions.

The defendant graduated high school in Guatemala and went on to obtain a Bachelor's Degree in Business Administration in Guatemala. She also reported taking some computer classes. She reported being fluent in both Spanish and English.

The defendant has never served in the U.S. military.

From February 1995 to March 1996, the defendant was employed with Super K-Mart as a customer service representative. From April 1996 to April 1998, the defendant was employed with Dollar Bank as a teller. From May 1998 to March 29, 2011, the defendant worked for the Board of Elections doing data entry earning $10.00 per hour. From February 2012 to March 2012, the defendant worked with the Board of Elections as a poll worker earning $10.00. This was a temporary position. The defendant is currently unemployed.

The defendant has no prior juvenile adjudications or adult convictions.

**(2) The Need for the Sentence Imposed**

    **(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

The Court sentenced the defendant to one day in confinement and to a three year period of supervised release during which the defendant is required to make restitution in the sum of $17,240 which the Court believes will satisfy the goals of 2A herein.

    **(B) to afford adequate deterrence to criminal conduct;**

(1:12 CR 145)

The Court is of the view that its sentence affords adequate deterrence to similar criminal conduct.

**(C) to protect the public from further crimes of the defendant;**

The defendant is 48 years old. The defendant has no prior criminal record. The Court is of the view that its sentence will protect the public from the possibility of further crimes of the defendant.

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

No applicable

## IV. Conclusion

For the reasons set forth herein, a sentence of one day in custody, three years supervised

(1:12 CR 145)

release and restitution, as previously indicated, and within the advisory guideline range, is a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2).

      IT IS SO ORDERED.


|  September 6, 2012 |    */s/ David D. Dowd, Jr.* |
|---|---|
| Date | David D. Dowd, Jr.<br>U.S. District Judge |